CENTEL CABLE TELEVISION COM-
PANY OF FLORIDA, Plaintiff,

v.

BURG & DIVOSTA CORPORATION,
and Jupiter Cablevision
Corporation, Defendants.

No. 88–8378–CIV.

United States District Court,
S.D. Florida,
West Palm Beach Division.

Sept. 21, 1988.

---

ORDER GRANTING CENTEL'S EMER-
GENCY MOTION FOR PRELIMI-
NARY INJUNCTIVE RELIEF

RYSKAMP, District Judge.

This matter was heard by the Court on August 6, 1988, upon Plaintiff's, Centel Cable Television Company of Florida ("Centel"), Emergency Motion for Preliminary Injunctive Relief. This Court considered the pleadings, affidavits, memoranda of law, evidence, and argument of counsel, and being otherwise fully informed in the premises, concludes that Centel is entitled to preliminary injunctive relief, and finds that:

1. Centel is a Florida corporation and is engaged in the business of providing cable television service to consumers. Cable television, as used herein, refers to television programming transmitted via coaxial cables, for which the receiver pays a subscription fee.

2. Centel holds a non-exclusive franchise (the "Franchise"), to provide cable television service to all of the Town of Jupiter, a municipality located within Palm Beach County, Florida, including a planned unit development known as The Hamptons at Maplewood ("The Hamptons"). Plaintiff's Exhibit "1". The Hamptons is a single-family, zero-lot line development of 395 lots.

3. Defendant, Burg & DiVosta Corporation ("Burg & DiVosta") is a Florida corporation which is engaged in the development of real estate as single- and multi-family units and is the developer of The Hamptons. Burg & DiVosta is now constructing housing units in The Hamptons. There are three phases to the development. Phase I is well underway with 60–70% of the driveways and sidewalks installed. Phase I will be completed by December 15, 1988; Phase II by February 15, 1989; and Phase III by May 15, 1989. The first certificates of occupancy will be obtained in mid-September, 1988.

4. Defendant, Jupiter Cablevision Corporation ("Jupiter Cablevision"), is a Florida Corporation and is engaged in the business of providing cable television service to consumers. Jupiter Cablevision also holds a non-exclusive franchise to provide cable television service to The Hamptons.

5. Jupiter Cablevision is controlled by Burg & DiVosta.

6. Burg & DiVosta recorded the plat (the "Plat") of The Hamptons on or about May 20, 1988. Plaintiff's Exhibit "2". The Plat itself was signed and the dedications contained therein were made on or about May 14, 1988. The dedications on the Plat have been accepted by the Town of Jupiter.

7. Centel has attempted to make immediate use of the public rights-of-way and express easements described within the Plat to construct a cable television system within The Hamptons but has been denied access to The Hamptons by Burg & DiVosta. Centel desired access in order to install its facilities in the easements at the time electrical and telephone facilities were being installed in the easements. Centel desires to sell cable television service to the unit owners of The Hamptons as they move in after obtaining their certificates of occupancy.

8. Burg & DiVosta has granted access to The Hamptons to electrical and telephone utilities and to Jupiter Cablevision. Burg & DiVosta asserts that if it permitted Centel to construct its cable system in The Hamptons simultaneously with those of other utilities and Jupiter Cablevision, there could or would be adverse effects on its construction schedule, on the safety of the construction site and on Burg & DiVosta's insurance rates. Burg & DiVosta maintains that it will not allow access to Centel without execution by Centel of a right-of-entry agreement. Burg & DiVosta further maintains that access can be denied until it determines that access is "safe" and that such restrictions on the use of compatible easements are permissable. Such an agreement has been tendered by Burg & DiVosta to Centel for another project. Plaintiff's Exhibit "5". Centel has refused to execute any such agreement.

9. Centel has provided cable television service in other developments of Burg & DiVosta; in these developments Centel has installed its cable television system during the course of the construction at the same time as the utilities have been laid in these developments. As a matter of orderly construction scheduling, television cable is best laid at the same time as other utilities are laid. Burg & DiVosta has allowed Centel access to these developments without requiring that Centel execute a right-of-entry agreement.

10. There is no evidence that in these developments there was any adverse effect on Burg & DiVosta's construction schedule, on the safety of the construction site or on Burg & DiVosta's insurance rates, as a result of Centel's construction and installation of its cable system during the course of construction. Given that there is no evidence of such scheduling, safety or insurance problems, the Court can only conclude that the denial of Centel's access to The Hamptons was an attempt to prevent Centel from temporarily competing with Jupiter Cablevision.

11. Jupiter Cablevision is now constructing and installing its cable system in The Hamptons. All utilities in The Hamptons, including cable television, are underground. Centel and any other cable company which may gain access to The Hamptons after the completion of construction will have to trench through yards, under completed sidewalks and driveways, all with additional expense to the cable operator and inconvenience to the homeowners.

12. There are many utilities now being located in the easements at The Hamptons including water, sewer, electrical, telephone, and cable television. If Centel is granted access early in the construction of The Hamptons, while other utilities are installing their equipment, problems of line cutting and destruction to private property such as driveway cutting and sod removal will be minimized. To permit Burg & DiVosta to deny access to Centel until The Hamptons is fully developed will only create such problems. The safety and appearance of the property and the convenience and safety of other persons will therefore be affected less adversely by the construction and installation of Centel's cable system if it is installed at the same time as the other utilities are installed.

13. Centel has been denied access to The Hamptons by Burg & DiVosta in contravention of the Cable Communications Policy Act of 1984 (the "Cable Act") and specifically Section 621 of the Cable Act, 47 U.S.C.A. § 541 (Supp.1985), which grants franchised cable operators the right to construct cable systems over public rights-of-way and easements which have been dedicated for compatible uses. Centel has a

clear statutory right of access pursuant to this section and Burg & DiVosta has presented no justification to deny Centel access even on a temporary basis.

14. Section 601(6) of the Cable Act (47 U.S.C.A. § 521(6)) specifically provides that a primary purpose of the Cable Act is to "promote competition in cable communications and minimize unnecessary regulation that would impose an undue burden on cable systems." The legislative history of the Cable Act is also clear. "Any private arrangements which seek to restrict a cable system's use of such easements and rights-of-way which have been granted to other utilities are in violation of this section and are not enforceable." H.R.Rep. No. 934, 98th Cong. 2d Sess. 19, 59 (1984), *reprinted in* U.S.Code Cong. & Ad.News 4655, 4656, 4696. The right-of-entry agreement which Burg & DiVosta requires Centel execute as a condition to access to The Hamptons and the requirement that access occur only after Burg & DiVosta determine that such access is "safe" are without any basis in law, are the type of private arrangements intended to be addressed by the Cable Act and are thus unenforceable. Further, the Cable Act does not permit a developer to grant access to one cable operator and to deny it to another.

15. Jupiter Cablevision and Centel offer basically the same cable television service. That being the case, if Jupiter Cablevision is able to have its cable television service available to residents of The Hamptons, prior to any service to be constructed by Centel, then Centel will suffer irreparable harm because it will be impossible to compute damages as a subscriber will have no incentive to change from Jupiter Cablevision to Centel.

16. If preliminary relief is not granted, Centel will incur indeterminable additional costs, will lose indeterminable customers, revenues and profits, and will suffer irreparable damage to its reputation and good will.

17. The record indicates that no substantial harm will be caused to Burg & DiVosta if preliminary injunctive relief is granted. Centel is insured, has posted a performance bond with the Town of Jupiter and has been in the cable business for a number of years. Further, Section 621(a)(2)(A)–(C) of the Cable Act (47 U.S.C.A. § 541(a)(2)(A)–(C)) provides Burg & DiVosta with statutory protection as to the manner of Centel's access to and work in The Hamptons. Section 621(a)(2)(C), as well as the common law, permits Burg & DiVosta to seek compensation for any harm caused by Centel. 47 U.S.C.A. § 541(a)(2)(C).

18. The record shows the likelihood that Centel will prevail on the merits to be very great; that Centel has a clear statutory right to gain access to The Hamptons; and that the threatened injury to Centel far outweighs the threatened harm, if any, the requested injunction may cause to Burg & DiVosta.

19. Finally, the grant of this preliminary injunction will not disserve the public interest; instead it will advance those public purposes set forth by Congress in the Cable Act.

20. This Court also finds that Centel has not sought nor does it have the right to install its cable system outside of the public rights-of-way and dedicated easements of The Hamptons. Centel has no right to run its cable television system directly to an individual residence unless the owner of that residence orders cable television service from Centel.

WHEREFORE, this Court hereby orders and adjudges that:

1. During the pendency of this action, Burg & DiVosta is enjoined from:

A. Denying Centel access to The Hamptons, for the purpose of constructing a cable system utilizing public rights-of-way and easements dedicated for compatible uses, including all utility easements;

B. Interfering with Centel's construction of a cable television system in The Hamptons utilizing public rights-of-way and easements dedicated for compatible uses, including all utility easements; and

C. Interfering with Centel's solicitation of subscribers to its cable television service at The Hamptons;

2. This order is binding upon Burg & DiVosta, its officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with it who receive actual notice of this order by personal service or otherwise.

3. This order will become effective by the posting of a bond in Burg & DiVosta's favor, with the Clerk of the Court in the amount of $25,000.00, by or before Sept. 23, 1988.

DONE AND ORDERED.