**RCN TELECOM SERVICES, INC., Plaintiff**

v.

**DELUCA ENTERPRISES, INC., d/b/a Hanover Crossing North, Defendant**

v.

**Jaindl Land Company, Third–Party Defendant**

and

**Service Electric Cable Television, Inc., Party Needed for Just Adjudication**

**No. Civ.A. 04–264.**

United States District Court, E.D. Pennsylvania.

July 12, 2005.

Henry S. Perkin, Lehigh County Solicitor County of Lehigh Dept. of Law, Allentown, PA, for Plaintiff.

Dwayne F. Stanley, Drinker Biddle & Reath Llp, Philadelphia, PA, for Defendant.

Richard F. Stevens, Stevens & Johnson, Allentown, PA, for Third-party Plaintiff.

### *OPINION*

STENGEL, District Judge.

RCN Telecom Services, Inc., a cable service provider, filed this suit against De-Luca Enterprises, Inc., a residential land developer, alleging a violation of section 621(a)(2) of the Cable Communications Policy Act of 1984 ("Cable Act"), 47 U.S.C. 541(a)(2). The threshold questions are whether there is an implied private right of action pursuant to the Cable Act and if the Act bars an exclusive agreement between a developer and a cable company that precludes rival cable companies from

providing services in a given residential development.

The parties' cross-motions for summary judgment frame the issues. Because I find that there is a private right of action, that the Act applies, and that there is no genuine issue of material fact regarding liability, I will deny DeLuca's motion for summary judgment and grant RCN's cross-motion for partial summary judgment. In the absence of a more complete factual record, however, I will deny RCN's request for permanent injunctive relief.

## I. The Parties and the Nature of the Dispute

### A. Service Electric's Exclusive Agreement

RCN Telecom Services, Inc. ("RCN") and Service Electric Cable Television, Inc. ("Service Electric") are telecommunications service providers offering cable television services to residents of Hanover Township, Pennsylvania. DeLuca Enterprises, Inc. ("DeLuca") and Jaindl Land Company ("Jaindl") are residential developers. Jaindl owned a 130.93 acre tract of land in Hanover Township and prepared plans to develop the property into a subdivision known as "Monocacy Farms." On May 15, 2002, Jaindl sold the property to DeLuca. In the Agreement for Purchase of Real Estate, DeLuca acknowledged that Jaindl had "contractually arranged for [Service Electric] to be the provider of cable television service" for the property, and agreed that it would not permit any other cable company to provide service

without Jaindl's express consent. *See* Agreement for Purchase of Real Estate, Pl.'s Motion for Partial Summ. J., Ex. 4, at 12. In August 2002,[1] Jaindl and Service Electric entered into a "TV Service Contract," which provided Service Electric the "sole and exclusive right to install, maintain and use cable television facilities to provide [cable television services]" to Monocacy Farms. *See* TV Cable Service Contract (Subdivision), Pl.'s Motion for Partial Summ. J., Ex. 5, at 1. Service Electric paid Jaindl $183,000.00 for the exclusive right to provide these services to the property.

DeLuca submitted a plan (the "Subdivision Plan" or "Plan") to the Hanover Township Board of Supervisors to develop the property as a residential subdivision called "Hanover Crossing North." The Subdivision Plan designates general utility easements on each of the lots in the subdivision. The Hanover Township Board of Supervisors granted final approval of the Subdivision Plan on April 22, 2003, and the Plan was recorded in the Northampton County Recorder of Deeds Office on April 14, 2004.[2]

### B. RCN's Request to Install Cable Equipment

During the development and construction in Hanover Crossing North, DeLuca excavated trenches to permit various utility companies-specifically, PPL (electric service), UGI (natural gas service), Verizon (telephone service), and Service Electric (cable television service)—to install their equipment in the utility easements.

1. Despite the apparent factual discrepancy, the agreement between Jaindl and Service Electric, though not formalized until August of 2002, was negotiated prior to the execution of the May 15, 2002 Agreement for Purchase of Real Estate between Jaindl and DeLuca and was acknowledged as a restriction on DeLuca's purchase.

2. Although there are no facts of record which explain the delay between the time the Board approved the Subdivision Plan and when it was formally recorded with the Recorder of Deeds Office, the parties agree that these dates are accurate.

DeLuca closed the trenches as construction in the development progressed. This process began in October 2003. That same month, RCN requested permission from DeLuca to install cable television equipment in the utility easements designated on the Subdivision Plan. DeLuca requested written consent from Jaindl, but did not receive it. Therefore, DeLuca denied RCN's request, citing the provision in the Agreement for Purchase of Real Estate which required Jaindl's express consent in order to allow any cable company other than Service Electric to provide cable services. When RCN advised DeLuca of its intention to file suit in federal court to gain access to the excavated trenches, DeLuca informed RCN that it could have access to the utility easements, but not the excavated trenches. RCN rejected this proposal. As of March 2005, a substantial majority of the excavated trenches had been filled in and closed.

## C. RCN's Claim Against DeLuca

RCN filed this suit, alleging that DeLuca violated section 621(a)(2) of the Cable Act and interfered with prospective contractual relations in violation of Pennsylvania state law. DeLuca then filed this motion for summary judgment. DeLuca denies that it violated the Cable Act and disputes whether RCN can bring a private cause of action under the Act. DeLuca also raises unclean hands and estoppel as defenses, alleging that RCN had proposed a similar exclusive service agreement with respect to one of DeLuca's other properties in June 2001, and that DeLuca relied on RCN's position that such exclusive agreements are valid and legal when it entered the Agreement for Purchase of Real Estate with Jaindl. RCN also filed a cross-motion for partial summary judgment on its claim that DeLuca violated the Cable Act by denying RCN access to the general utility trenches.

## II. Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." FED. RULE CIV. PROC. 56(c). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Highlands Ins. Co. v. Hobbs Group LLC*, 373 F.3d 347, 350–51 (3d Cir.2004). Once the moving party has carried its burden, the nonmoving party must come forward with specific facts to show that there is a genuine issue for trial. *Williams v. West Chester*, 891 F.2d 458, 464 (3d Cir.1989). A fact is "material" if its resolution will affect the outcome under the applicable law, and an issue about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must draw all justifiable inferences in favor of the nonmoving party. *Highlands*, 373 F.3d at 351.

If the party moving for summary judgment is the defendant, or the party without the burden on the underlying claim, the moving party has no obligation to produce evidence negating the nonmoving party's case. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1581–82 (3d Cir.1992). The moving party only has to point to the lack of sufficient evidence to support the nonmoving party's claim. *Id.* at 1582. However, where the moving party is the plaintiff, or the party bearing the burden of proof at trial, the standard is more stringent. *Id.* The moving party must support its motion with credible evidence that would entitle it to a directed

verdict if not controverted at trial. *See id.* In other words, when the moving party has the burden of proof at trial, that party must establish, on all of the essential elements of its case, that no reasonable jury could find for the nonmoving party. *In re Bressman,* 327 F.3d 229, 238 (3d Cir.2003). If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party responds with probative evidence demonstrating the existence of a triable issue of fact. *Id.*

### III. DeLuca's Motion for Summary Judgment

RCN challenges the validity of the Jaindl/Service Electric exclusive service contract under section 621(a)(2) of the Cable Act. In its motion for summary judgment, DeLuca argues that the Cable Act does not provide for a private cause of action, nor does it apply to this case. In relevant part, the Act provides:

> Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses, except that in using such easements the cable operator shall ensure—
>
> (A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;
>
> (B) that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination, or both; and
>
> (C) that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

47 U.S.C. § 541(a)(2).

The first question to consider is whether the easements identified on the Subdivision Plan are "dedicated for compatible uses" within the meaning of section 621(a)(2). If the easements are "dedicated," the Cable Act applies. The next question is whether RCN has a private right of action under the Act.

### A. Are the Easements "Dedicated for Compatible Uses"?

In order for section 621(a)(2) of the Cable Act to apply, the land in question must be "dedicated for compatible uses." In this case, the land is an easement across a residential development, in which the utility trenches had been placed. "Compatible uses" include uses for other utility transmissions, such as gas, electricity, or telephone service. *See Centel Cable Television Co. of Florida v. Thos. J. White Dev. Corp.,* 902 F.2d 905, 909 (11th Cir. 1990); *see also* H.R.Rep. No. 934, 98th Cong., 2d Sess. 59, *reprinted in* 1984 U.S.Code Cong. & Admin. News 4655, 4696 (noting that easements "dedicated for compatible uses" would include those "dedicated for electric gas or other utility transmission"). The Cable Act, however, does not specifically define the term "dedicated." Some federal courts hold that "dedicated" simply means "set aside" or "designated" in the ordinary sense; others consider "dedicated" to be a legal term of art. *See Century Southwest Cable Television, Inc. v. CIIF Assoc.,* 33 F.3d 1068, 1070–71 (9th Cir.1994) (noting the division within the circuits). As a legal term of art, the word "dedicate" means "[t]o appropriate and set apart one's private property to some public use; as to make a private way

public by acts evincing an intention to do so." *Black's Law Dictionary* 371(1979). The vast majority of courts have adopted this definition. *See Cable Arizona Corp. v. Coxcom, Inc.,* 261 F.3d 871, 874 (9th Cir. 2001) ("We do not repeat it, but we agree that § 621(a)(2) provides a right of access over private easements only if the property owner has appropriated and set aside those easements for general use."); *TCI v. Schriock Holding Co.,* 11 F.3d 812, 814 (8th Cir.1993) ("A plain reading of § [621(a)(2) ] mandates application of the legal definition of 'dedicated.'"); *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condominium Council of Co–Owners,* 991 F.2d 1169, 1173 (4th Cir.1993) ("The word 'dedicated' has a more restricted and legally significant definition in the property-law context than in the layman's vocabulary."); *Cable Investments, Inc. v. Woolley,* 867 F.2d 151, 155–59 (3d Cir.1989); *Cable Assoc., Inc. v. Town & Country Mgmt. Corp.,* 709 F.Supp. 582, 584 (E.D.Pa.1989) ("When Congress used the word 'easements' and qualified that word with the phrase 'dedicated for compatible uses,' it was referring to private easements but limited private easements to those dedicated for compatible uses in accordance with the definition of 'dedicate' in *Black's Law Dictionary.*"); *Surnamer v. RCN Telecom Serv. of Pennsylvania,* 1999 WL 171455, *6, 1999 U.S. Dist. LEXIS 3664, at *16–17 (E.D.Pa.1999) (finding that "'dedicated' is term of art"). Consistent with the rule of statutory construction that terms of art should be construed "by reference to the art or science involved," *see Media Gen. Cable,* 991 F.2d at 1173 (citations omitted), I find that to "dedicate" an easement, "the grantor must make public his or her intention to appropriate property for a public use and the same must be accepted by or on behalf of the public." *TCI,* 11 F.3d at 815.

The question then is whether DeLuca in fact conveyed an easement to the public. Several courts have found that the act of recording a subdivision plat which identifies corridors of land available for general utility use may constitute a "dedication." *See id.* at 816; *McNeil,* 953 F.2d at 606, 608–09; *Centel Cable Television Co. v. Burg & DiVosta Corp.,* 712 F.Supp. 176 (S.D.Fla.1988). For example, in *TCI,* 11 F.3d at 816, although the court declined to find that an easement had been "dedicated" in the legal sense of the word, it noted:

> In the usual situation, a developer will file, record and present to a public governing body (a city or county for instance) a plat of his property clearly delineating the corridors of that property that are available for general public use by utilities, and by doing so the corridors so delineated are dedicated to the use of the general public for utility purposes when the plat is accepted by the local governing body.

*Id.* Likewise, in *McNeil,* 953 F.2d at 606, 608–09 the Eleventh Circuit concluded that the appellee had no right to access the interior of appellant's buildings based on a privately granted easement, but distinguished the case from those in which the defendants had recorded plats showing corridors of land available for general utility use. According to the court:

> The crucial distinction between [*Centel Cable Television Co. of Florida v. Thos. J. White Development Corp.,* 902 F.2d 905 (11th Cir.1990) and *Centel Cable Television Co. v. Admiral's Cove Associates, Ltd.,* 835 F.2d 1359 (11th Cir. 1988) ] and the present case is the types of easements involved. Both *Admiral's Cove* and *Thos. J. White* involved the *dedicated* utility easements which are typically granted before a private property owner begins the development of a new residential subdivision. In both cases, the developer of the property ded-

icated utility easements by recording (with the appropriate governmental authority) plats showing the corridors of land available for general utility use. In both cases, the property developer was required by Florida law to dedicate these corridors of land for general utility use. In both cases, we determined that these utility easements-dedicated to the public for general utility use-were precisely the types of easements accessible by a franchised cable company pursuant to Section 621(a)(2).

In sharp contrast to *Admiral's Cove* and *Thos. J. White*, the alleged easements at issue in the present case are not easements dedicated by the developer of a residential subdivision for general utility use. *McNeil has not recorded plats showing corridors of property available for general use by utilities seeking to access the interiors of McNeil's apartment buildings.* Rather, through private negotiation and agreement, McNeil has allowed particular entities to cross its land and enter its building in order to provide service for the tenants of the buildings. These access rights are not dedicated easements within the language of Section 621(a)(2) and within the scope of our interpretations of that language in *Admiral's Cove* and *Thos. J. White*.

*Id.* (second emphasis added).

In this case, DeLuca submitted a Plan to the Hanover Township Board of Supervisors, which designated utility easements throughout the subdivision. The Plan was approved and recorded in the Northampton County Recorder of Deeds Office. In recording the plat, DeLuca "dedicated" the utility easements for "compatible uses," and I therefore find that section 621(a)(2) applies.

## B. The Private Right of Action Under the Cable Act

■ Whether there is an implied right of action pursuant to the Cable Act is a question that has yet to be resolved by the Third Circuit. Although at least one court in this Circuit has declined to find such a right,[3] the Fourth and Eleventh Circuits, as well as several courts within the Eastern District of Pennsylvania, have held that there is a private right of action. Because I find the reasoning of the Fourth and Eleventh Circuits to be sound, I follow their lead in finding that RCN has a private right of action in this case.

■ The competing views are set forth in two well-reasoned opinions: *Centel Cable Television Company of Florida v. Admiral's Cove Associates*, 835 F.2d 1359 (11th Cir.1988) and *Cable Investments, Inc. v. Woolley*, 680 F.Supp. 174 (M.D.Pa. 1987), *aff'd on other grounds*, 867 F.2d 151 (3d Cir.1989). Both the *Admiral's Cove* and *Woolley* courts reviewed the four-

---

**3.** *Cable Investments, Inc. v. Woolley*, 680 F.Supp. 174 (M.D.Pa.1987) is discussed at length below. In *Rollins Cablevue, Inc. v. Saienni Enterprises*, 633 F.Supp. 1315 (D.Del. 1986), the court addressed a slightly different question, namely, whether there was a private right of action for a franchised cable operator to enjoin the construction and operation of an unfranchised cable system. The court found that there was not such a right. *Id.* at 1320. The *Rollins* court, however, also confronted the question of whether the plaintiff, a franchised cable company, had right of access to apartment buildings owned by the defendant. Reviewing both federal and state law, the court granted plaintiff's request for a preliminary injunction to prevent defendant from interfering or tampering with plaintiff's cable equipment, finding that there was a likelihood of success on the right of access issue. In a subsequent case, the court granted plaintiff's motion for partial summary, providing plaintiff with a right of access to multi-unit dwellings in defendant's apartment complex. *Rollins v. Cablevue, Inc.*, 1987 WL 54378, 1987 U.S. Dist. LEXIS 14717 (Apr. 28, 1987).

prong test announced by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether a cause of action may be implied from a statute. As the Supreme Court has recognized, in the absence of an express right, courts may find an implied cause of action under a federal statute where there is evidence that Congress so intended. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). In *Cort*, the Court identified four relevant factors in considering such congressional intent:

> First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,'-that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort*, 422 U.S. at 78, 95 S.Ct. 2080. It is in their analyses of these factors that the Middle District of Pennsylvania and the Eleventh Circuit have taken different paths.

In *Admiral's Cove*, a residential land developer precluded Centel, a franchised cable company, from installing its cable lines in easements that had been dedicated for use by telephone and electric utilities. Centel sought injunctive relief permitting it to install its cables. The district court denied the injunction, finding that there

was no private cause of action pursuant to the Cable Act, and the Eleventh Circuit reversed. Analyzing the *Cort* factors, the appellate court found that cable franchises did belong to the class for whose especial benefit Cable Act was passed, noting that the cable industry played a crucial role in the passage of the Act, and that promoting the growth and development of cable systems was one of the primary purposes behind the law. *Id.* at 1361. The court further found that "if Congress truly desired the cable industry to flourish, then it would permit a cable franchise to enforce its right to lay cable along utility easements through the courts," and therefore, concluded that the legislative history reveals an intent to provide a private cause of action. *Id.* at 1362. The Eleventh Circuit posited that the cable franchise itself, not the franchising authority, was in the best position to spearhead any litigation necessary to protect its rights under the Cable Act, noting, "[w]e are unconvinced that Congress believed a local government would choose to spend its tax revenues fighting for the rights of the cable franchise as willingly as the franchise owner would fight for its own rights." *Id.* at 1363. The *Admiral's Cove* court therefore concluded that a private cause of action was consistent with the statutory scheme. Finally, the court found that although some states had laws giving cable companies a right of access, these states were in the minority. The Cable Act was intended "to alleviate the patchwork of federal, state, and local laws that hampered the growth of cable television" and was passed in an effort to "provide uniformity." *Id.* at 1363–64. Thus, the court determined that "the fourth *Cort* factor does not counsel against a cause of action."[4] *Id.* at 1364.

---

4. Following *Admiral's Cove*, the Eleventh Circuit has twice reaffirmed its conclusion that section 621(a)(2) of the Cable Act creates a private cause of action, and the Fourth Circuit and two district courts in the Circuit have found *Admiral's Cove* persuasive. *See Media*

In *Woolley,* by contrast, the question presented was whether a cable company was entitled to access the interior of apartment buildings owned by the defendant. Reviewing the *Cort* factors, the Middle District of Pennsylvania concluded that there was no implied private cause of action under the Cable Act. According to the court, the underlying purpose of the Cable Act was to respond to the needs of local communities and establish a framework for federal, state, and local regulation of the industry. *Id.* at 179. The court therefore determined that "it cannot be reasonably understood that Congress sought to provide special benefit to cable companies." *Id.* Moreover, the court reasoned that there was no evidence of legislative intent to grant a private right of action, nor was an implied right consistent with the underlying legislative scheme because courts that had reviewed the Communications Act of 1934, to which the Cable Act is an amendment, did not find such a right. *Id.* at 180. Finally, the *Woolley* court found that "whether a right to access exists over public rights-of-way and through easements dedicated for compatible uses[ ] is an issue traditionally left to be determined by the common law or statutory law of the states," explaining further that the "local

franchising authority has it within its power to determine, as well as enforce, plaintiff's rights under applicable state law." *Id.*

The Third Circuit has not yet decided whether such a cause of action exists under the Cable Act, and expressly declined to do so in its review of *Woolley.* See *Cable Investments, Inc. v. Woolley,* 867 F.2d 151 (3d Cir.1989). The court affirmed the district court decision on other grounds,[5] but explicitly declined to address the question of whether there was an implied cause of action. *Id.* at 154. The court observed, however, that the district court reached its decision before the Eleventh Circuit issued its opinion in *Admiral's Cove.* The court explained: "While we intimate no opinion on a private right of action under the [*Admiral's Cove*] facts, we note that the substantive right sought to be enforced in [*Admiral's Cove*] is more limited than that sought here, where Cable Investments seeks access to tenants inside buildings owned by Waterford Associates." *Id.* The right sought by RCN is limited in the same sense as that sought in *Admiral's Cove.* RCN does not seek access to the interior of any building or multi-unit dwelling.

*Gen. Cable of Fairfax, Inc. v. Sequoyah Condominium Council of Co–Owners,* 991 F.2d 1169, 1171 (4th Cir.1993) (finding that a private action for violation of the Cable Act "passes muster under the *Cort v. Ash* standards"); *Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.,* 953 F.2d 600 (11th Cir.1992) (holding that a private cause of action exists, but finding that private agreement to grant access to interior of apartment building did not constitute a "dedication"); *Centel Cable Company of Florida v. Thos. J. White Development Corp.,* 902 F.2d 905 (11th Cir.1990) (reaffirming the holding in *Admiral's Cove* that a private right of action exists and further concluding that cable company was entitled to use private roads that were "reasonably necessary" to use and enjoyment of the easement); *Lower Bucks Ca-*

*blevision, Inc. v. Lower Makefield Township,* 1996 WL 61482, *2, 1996 U.S. Dist. LEXIS 1507, at *6 (E.D.Pa. Feb. 12, 1996) (Hutton, J.) (noting that the "weight of authority appears to favor a private right of action" and distinguishing *Woolley* ); *Cable Assoc., Inc. v. Town & Country Mgmt. Corp.,* 709 F.Supp. 582, 588 (E.D.Pa.1989) (Cahn, J.) ("I find Judge Fay's analysis [in *Admiral's Cove*] extremely sound and adopt it for purposes of this case.").

5. The issue before the Third Circuit was whether the Cable Act mandates access by cable companies to the interior of multi-unit dwellings. The court held that it does not. *Woolley,* 867 F.2d at 159.

My review of the language, purpose, and history of the Cable Act, and my consideration of the *Cort* factors lead me to conclude that Congress intended to create a private cause of action, and I adopt the reasoning set forth in *Admiral's Cove*. Although one goal of the Act was to create a regulatory framework as the district court noted in *Woolley*, another was to "encourage the growth and development of cable systems," 47 U.S.C. § 521(2), a purpose which brings cable franchises into the "class for whose especial benefit the statute was enacted." *Cort*, 422 U.S. at 78, 422 U.S. 66. It seems inconsistent to deny a private right of action to a party well-suited to promote the growth of the development of a cable system. The stated purpose of the Cable Act would be thwarted, not advanced, by the denial of a private cause of action to a cable company. For this reason, I find particularly persuasive the Eleventh Circuit's observation that cable companies are the parties best suited to vindicate the rights provided in the Cable Act. I note that, like the appellant cable franchise in *Admiral's Cove*, RCN is not seeking access to the interior of buildings, but merely the right of access to "dedicated" easements within the residential development.

Because I find that there is a private cause of action pursuant to the Cable Act and that the easements at issue in this case are "dedicated" within the meaning of the statute, I will deny DeLuca's motion for summary judgment.

## IV. RCN's Motion for Partial Summary

RCN also filed a motion for partial summary judgment, seeking a determination that DeLuca violated the Cable Act by refusing to permit RCN to install cable television equipment in the open utility easements at Hanover Crossing North.

RCN requests permanent injunctive relief providing access to open and closed utility easements within Hanover Crossing North to install cable television equipment. Because I find that DeLuca violated section 621(a)(2) by refusing to give RCN access to the utility trenches in October 2003, I will grant RCN's motion for summary judgment as to the issue of liability. However, in the absence of a more developed factual record, I will deny the request for a permanent injunction.

DeLuca does not dispute that it denied RCN access to open utility trenches at Hanover Crossing North. DeLuca, however, contends that because it offered access to closed trenches after RCN threatened to file suit, it did not violate the Cable Act. Moreover, DeLuca asserts RCN's claims are barred by the affirmative defenses of unclean hands and estoppel because RCN attempted to negotiate a similar exclusive service contract between the summer of 2001 and summer of 2002.

## A. DeLuca's Violation of the Cable Act

Contrary to DeLuca's position, several courts have found that the Cable Act requires that competing cable franchises be permitted equal use and enjoyment of a dedicated easement. *See, e.g., Thos. J. White Dev. Corp.*, 902 F.2d at 909 (11th Cir.1990) (holding that developer could not preclude cable franchise from using private roads as a means of thwarting the intent of the Cable Act); *Burg & DiVosta Corp.*, 712 F.Supp. at 178 (finding that "[t]he Cable Act does not permit a developer to grant access to one cable operator and to deny it to another.") DeLuca denied RCN access to the utility trenches, but permitted such access to Service Electric. I find that in so doing, DeLuca deprived RCN of the equal right to the use

and enjoyment of the easement and thereby violated the Cable Act.

## B. DeLuca's Affirmative Defenses

 The doctrines of unclean hands and estoppel, if established, may preclude equitable relief. However, there is no evidence to support an application of either defense in this case. To establish unclean hands, the defendant must show: (1) that the party seeking relief engaged in conduct involving fraud, deceit, unconscionability, or bad faith; (2) that such conduct is directly related to the matter at issue before the court; (3) that the conduct injures the other party; and (4) that the conduct affects the balance of equities between the litigants. *See In re New Valley Corp.*, 181 F.3d 517, 523, 527 (3d Cir.1999). In this case, DeLuca's claim of unclean hands is interesting. Apparently, RCN took a contrary legal position regarding the validity of exclusive cable agreements in the months immediately preceding the execution of DeLuca's purchase agreement with Jaindl. That is, RCN attempted to enter the same kind of exclusive agreement it now claims is illegal under the Cable Act. DeLuca essentially asks this court to preclude RCN's legal argument in this case because it, at one time, advanced an inconsistent or contrary legal position. This inconsistency alone is not enough; DeLuca must show fraud, deceit, or bad faith. DeLuca has pointed to no evidence that RCN acted fraudulently, deceitfully, or in bad faith in adopting or changing its position. Therefore, DeLuca's claim of unclean hands raises no genuine issues of material fact which would preclude a grant of summary judgment.

 Likewise, DeLuca's claim of estoppel fails. To prove estoppel, DeLuca must establish that (1) RCN made a material misrepresentation; (2) DeLuca reasonably relied on that representation; and (3)

damage resulted from DeLuca's reliance. *See, e.g., Hein v. FDIC*, 88 F.3d 210, 221 (3d Cir.1996) (citations omitted). Whether equitable estoppel should apply is a question of law to be decided by the court. *Melhorn v. Amrep Corp.*, 373 F.Supp. 1378, 1380 (M.D.Pa.1974) (citing *Burke v. Gateway Clipper, Inc.*, 441 F.2d, at 948–49 (3d Cir.1971)). The material misrepresentation must be one of fact as "[e]stoppel cannot be created by representations or opinions concerning matters of law." *See In re Close*, 2003 WL 22697825, *7, n. 10, 2003 Bank. LEXIS 1507, at *23–24 & n. 10 (E.D.Pa.Bankr.Oct. 29, 2003) (citations omitted). DeLuca alleges that RCN should be estopped from asserting a violation of the Cable Act, because RCN had previously represented that exclusive agreements were legally valid. Because the alleged misrepresentation involved a legal opinion, i.e., the validity of exclusive cable agreements, and not a misrepresentation of fact, estoppel does not apply.

## C. RCN's Request for a Permanent Injunction

 Finally, RCN requests that this court issue a permanent injunction, requiring DeLuca to reopen utility trenches and permitting RCN to install cable equipment. In deciding whether to grant permanent injunctive relief, a court must consider four factors: (1) whether the moving party has shown a likelihood of actual success on the merits, (2) whether the moving party will be irreparably injured by the denial of injunctive relief, (3) whether the granting of injunctive relief will result in even greater harm to the defendant, and (4) whether the injunction would be in the public interest. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir.2001) (citations omitted). Because a more developed factual record is necessary to determine whether permanent injunctive relief

is appropriate, I will deny RCN's partial motion for summary judgment.

There is a factual dispute regarding the request for equitable relief. RCN is seeking access to open and closed utility trenches in Hanover Crossing North. In DeLuca's Counterstatement of Facts, it claims that there are various methods by which RCN could install cable equipment without having to reopen the utility trenches. Neither party has provided any information regarding the relative costs and burdens of each of the methods of cable installation. Therefore, there is a triable issue regarding whether RCN will be irreparably harmed, and if the harm to DeLuca resulting from a grant of injunctive relief would outweigh the harm to RCN.

There are also genuine issues of material fact regarding whether injunctive relief would be in the public interest. The current record does not reflect the extent of construction at Hanover Crossing North or the amount of disruption reopening trenches would cause to local residents.

Because further factual development is necessary, I will deny RCN's request for permanent injunctive relief.

## IV. Conclusion

Upon review of the relevant law and the factual record in this case, I find that RCN has a private right of action pursuant to section 621(a)(2) of the Cable Act, and because the utility easements at issue in this case were "dedicated for compatible uses," the Act applies to this dispute. DeLuca refused to grant RCN access to dedicated utility easements, and thereby violated the Cable Act. For those reasons, I will deny DeLuca's motion for summary judgment and grant RCN's motion for partial summary judgment as it relates to liability. However, because there are genuine issues of material fact regarding whether a per-

manent injunction is a proper remedy, I will deny RCN's request for such relief.

An appropriate order follows.