**CABLE ASSOCIATES, INC., et al.**

v.

**The TOWN & COUNTRY MANAGEMENT CORPORATION t/a Superior Cable Company (Two Cases).**

Civ. A. Nos. 88–5224, 88–5225.

United States District Court,
E.D. Pennsylvania.

Feb. 15, 1989.

Edward M. Foley, Brutscher, Brutscher & Foley, Kennett Square, Pa., for plaintiffs.

Norman E. Greenspan, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., Richard L. Stoper, Jr., R. Jeffrey Pollock, Burke, Haber & Berick Co., L.P.A., Cleveland, Ohio, for defendants.

## OPINION

CAHN, District Judge.

Cable Associates, Inc., t/a Suburban Cable of Lancaster County ("Suburban") sought equitable relief under section 621(a)(2) of the Cable Communications Policy Act of 1984, 47 U.S.C. § 541(a)(2) (Supp. IV 1988),[1] against The Town & Country Management Corporation t/a Superior Cable Company ("T & C") in order to enable Suburban to continue to supply cable television service to the tenants at two apartment complexes in Lancaster County. In a bench opinion delivered August 17, 1988, following a non-jury trial, I found that the plaintiffs had a private right of action under the statute; that Suburban was entitled to reimbursement for damage done to its cable; but that Suburban had no right to continue to use drop lines to individual apartments through the buildings managed by the defendant without permission from the defendant. I denied Suburban's claims based upon alleged violations of the antitrust statutes. I also denied equitable relief to Suburban based upon state law claims. In order to avoid a repetition of the factual background of this controversy, a copy of the bench opinion is attached hereto as Appendix "A."

Plaintiff filed a post trial motion with this court to amend the findings in the bench opinion and to amend the judgment entered on August 19, 1988. Plaintiff also filed an appeal to the Third Circuit Court of Appeals. I erroneously dismissed the post trial motion in this court because of that pending appeal. However, proper procedure requires that the post trial motion be considered in this court. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1983).

The sole contention of Suburban in its post trial motion involves the construction and interpretation of section 621(a)(2) of the Cable Act. This section provides:

Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which had been dedicated for compatible uses, except that in using such easements the cable operator shall insure—

(A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;

(B) that the cost of the installation, construction, operation, or removal of

---

1. This statute will hereinafter be referred to as the "Cable Act."

such facilities be borne by the cable operator or subscriber, or a combination of both;

(C) that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

In the bench opinion I construed the word "dedicated" in the statute in its legal sense according to *Black's Law Dictionary*. Although I used the fourth edition of this text in the bench opinion, the definition used in the fifth edition is substantially the same and provides at page 371:

Dedicate. To appropriate and set apart one's private property to some public use; as to make a private way public by acts evincing an intention to do so.

Dedication. The appropriation of land, or an easement therein, by the owner, for the use of the public, and accepted for such use by or on behalf of the public.

*Black's Law Dictionary* 371 (5th ed. 1979).

It is plaintiff's major contention that my interpretation of the word "dedicated" in the statute is unduly restrictive. More precisely, Suburban urges that the definition of "dedicate" in *Webster's New Collegiate Dictionary*, G. & C. Merriam Company (1979 edition) stating "to set apart to a definite use" is what Congress meant. There are a number of reasons why Suburban is incorrect.

It is generally accepted that where Congress uses technical words, or terms of art, those words are to be construed by reference to the art or science involved. *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). Consequently, when Congress uses the word "dedicated" in the context of real property law, I am required to construe that word in accordance with its meaning under concepts of real property law.

As can be seen from references to the definition of "dedicate" and "dedication" in *Black's Law Dictionary*, the concept involves a conveyance to the public of some interest in real property.[2]

It should be noted that Suburban's post trial motion is directed primarily to the Colonial Crest apartment complex. The reason for this is that Colonial Crest (but not Oakview) has granted an easement to Bell Telephone Company recorded in the Recorder of Deeds' Office for Lancaster County, which provides:

"With the further right to place and maintain building cable, terminals, wires, and additional facilities that may be required to provide service to 'Colonial Crest' now or in the future."

A copy of the easement agreement is attached hereto as Appendix "B." Suburban's position is that the Bell Telephone Company easement is "dedicated for compatible uses" and, therefore, Suburban may continue to utilize the existing drop lines to provide cable television service to the individual apartments in the Colonial Crest complex. There is no evidence the drop lines follow existing Bell Telephone lines. Instead, it is Suburban's position that the broad Bell Telephone easement and the statute provide a right to Suburban to continue to use its existing drop lines.

■ A crucial issue, therefore, is whether or not "dedicated" requires a conveyance to the public and acceptance on behalf of the public or whether "dedicated" means a private easement set apart for compatible purposes.

Suburban urges that because the phrase "rights-of-way" in the statute is prefaced by the adjective "public," and the word "easements" is not, Congress must have meant private easements rather than easements dedicated to public use. I do not think so. When Congress spoke of "public rights-of-way," it was referring to rights-of-way open to the public such as state highways, municipal roads, and other rights-of-way the public uses. When Congress used the word "easements" and qualified that word with the phrase "dedicated for compatible uses," it was referring to

---

**2.** For a more detailed explanation of the concept of dedication, *see* 23 Am.Jur.2d Dedication, § 1, et seq. (1983).

private easements but limited private easements to those dedicated for compatible uses in accordance with the definition of "dedicate" in *Black's Law Dictionary*. In order to understand why Congress did this, it is necessary to review the legislative history of the Cable Act.

That task has been accomplished for us by Judge Sloviter in *Cable Investments, Inc. v. Mark Woolley*, 867 F.2d 151 (3d Cir.1989). In that decision, the court did not adjudicate the issue of whether the Cable Act establishes a private right of action for a franchised cable operator. The court held, however, that section 621(a)(2) does not provide a franchised cable operator with access into an apartment building to individual apartments even though the property owner has granted easements to utilities through which cable companies could install their wiring. Judge Sloviter primarily based her conclusion on the legislative history of the Cable Act. She determined that Congress intentionally stopped short of providing payment for just compensation to an owner of a multi-unit project by a franchised cable operator who wishes to invade the owner's property through a private easement. I am, of course, bound by this pronouncement and must apply it to this case.

■ Nevertheless, Suburban continues to assert that its interpretation of section 621(a)(2) of the Cable Act is correct. Suburban urges that Judge Sloviter did not adjudicate the issue in the factual context of the case at bar. Suburban points to the following language of Judge Sloviter's opinion:

> Although it clarifies that a cable television franchisee may use easements dedicated for electric, gas or other utilities, it does not illume the critical issue, whether those easements are considered to run up to as well as into an apartment building for purposes of mandatory access.

It is Suburban's position that at Colonial Crest the Bell Telephone Company easement does run into the individual apartments and that, therefore, the within case is distinguishable from *Cable Investments*.

I think Suburban's reading of *Cable Investments* is too narrow. In *Cable Investments* Judge Sloviter identified the plaintiff's argument as follows:

> Under its argument, if property owners grant easements to utilities through which cable companies could install their wiring, then the cable companies can compel the owners of a multi-unit dwelling, such as Waterford, to give them access to the private property and inside the apartment buildings themselves. Specifically, it argues that "Section 621(a)(2) [47 U.S.C. § 541(a)(2)] allows cable operators such as Cable Investments to use *any* easements which have been dedicated to a use compatible with the provision of cable television, not just those which are on the exterior of buildings. To the extent that the easements continue into the buildings, section 621(a)(2) requires access."

It seems to me that *Cable Investments* involved exactly the same issue as in the case at bar. If it does, then Suburban's post trial motion must be denied.

If Suburban is correct that *Cable Investments* should be read to allow Suburban to "piggyback" on this specific Bell Telephone easement, it is my view that Suburban's post trial motion should still be denied. As Judge Sloviter observed, Congress was concerned with the constitutional strictures of *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). Congress deleted both a mandatory access provision and a provision for the payment of just compensation from the Cable Act. These deletions were for the express purpose of eliminating mandatory access to private apartment units in multi-unit projects. Under the Cable Act Congress did not intend to confer eminent domain rights on franchised cable operators.

Under Suburban's theory, Congress intended that a franchised cable operator have mandatory access through private easements that are compatible and that are "dedicated" in the broader sense that they are merely set apart for some private purpose. The problem with Suburban's theory

is that just compensation would be required if Congress mandated that a private owner of real property allow access to a franchise cable operator through a strictly private easement. As I understand Congress's intent, it used "dedicated" in the legal sense to avoid this problem. Congress meant that, if a landlord set apart his private property for a public use, then that landlord must allow a franchised cable operator, as a member of the public, to use the easement provided the dedicated easement is compatible for cable television purposes. Since it is clear that the Bell Telephone easement is not "dedicated" in this sense, Suburban's post trial motion must be denied.

■ There is still another flaw in Suburban's theory. Even if the Bell Telephone easement is deemed "dedicated" for Cable Act purposes, Suburban's post trial motion must be denied. It should be kept in mind that Suburban wishes to "piggyback" on the easement in the sense that the easement allows Suburban to continue to use existing drop lines. Actually, Suburban would be limited to following the as-built telephone lines and then only if room is left by the Bell Telephone Company.[3] There is no evidence in this record that Suburban's drop lines are within the Bell Telephone easement and, if not, whether there is room therein for additional drop lines. Where there is no specific limitation in the scope of a utility easement, its boundaries are determined by the actual location of the grantees' wires. *See Beavers v. West Penn Power Company*, 436 F.2d 869, 874 (3d Cir.1971).

An appropriate order will be entered.

### ORDER

AND NOW, this 15 day of February, 1989, IT IS ORDERED that the post trial motions of Cable Associates, Inc., in the within cases are DENIED.

3. *See Meyerson,* The Cable Communications Policy Act of 1984: A Balancing Act on the Coaxial Wires, 19 Georgia L.Rev., 543, 611 (1985) wherein it is stated: "Accordingly, a cable operator

### APPENDIX A

Laws Transcription Service
### BENCH OPINION

On July 2nd, 1988, Plaintiffs (a Cable TV Company and certain of its customers) filed two cases against an apartment complex management company containing a plethora of federal and state claims relating to the management company's notification that it was terminating the right of the cable TV company to provide service in two apartment complexes in Lancaster County. The two cases have been consolidated for all purposes. The plaintiffs sought emergency equitable relief. I requested plaintiff to notify defendant of the time and place of an emergency hearing. At the emergency hearing defendant's counsel appeared and an accommodation was reached between plaintiff's counsel and defendant's counsel which eliminated, at least in my mind, any need for a formal decree relating to the claims for emergency relief. This accommodation included the scheduling of a full hearing on the merits on or about August 15th, 1988. Nevertheless, the Honorable Norma Shapiro, acting as Emergency Judge for this Court, was required to enter a formal order on July 15th, 1988 while I was on vacation.

Discovery has been completed, a full nonjury trial has been held, argument has been heard and I now make the following:

### FINDINGS OF FACT

1. The plaintiffs are Cable Associates, Inc., t/a Suburban Cable of Lancaster County, a Pennsylvania corporation with principal offices in Pennsylvania, hereinafter referred to as "Suburban," and various tenants in the two apartment complexes who are also customers of Suburban.

2. The defendant is The Town & Country Management Corporation, trading as Superior Cable Company (T & C), which is a Delaware corporation with a principal place for doing business in Maryland.

can only gain access to a building through an easement if there is room left by the preexisting user."

3. The individual plaintiffs are citizens of the Commonwealth of Pennsylvania.

4. T & C manages apartment complexes in Pennsylvania and Maryland, and it has complete authority from the owners of said complexes to make all management decisions relating to said complexes.

5. T & C manages two apartment complexes in Lancaster County known as Colonial Crest in East Hempfield Township and Oakview in East Lampeter Township. To the extent relevant, T & C is obligated by all of the acts, contractual and otherwise, entered into by the developers of the two complexes before T & C became the management corporation for said complexes.

6a. In the mid 1970's Suburban Cable entered into an arrangement at Colonial Crest in regard to phase one consisting of 120 units whereby Colonial Crest paid for a portion of the cost of installing cable service to the units and Suburban agreed to a bulk billing rate to Colonial Crest.

6b. Thereafter at subsequent phases in the development of Colonial Crest Suburban paid for all of the costs to install cable service except that in regard to lines, known as drop lines, the electrical contractor for the complex installed those lines although Suburban provided the material.

6c. In regard to installation of cable service at Oakview, the arrangement was similar to the subsequent phases of construction at Colonial Crest.

6d. In the early 1980's Suburban upgraded its cable service at both complexes and made arrangements to eliminate the bulk billing in regard to phase one at Colonial Crest and placed phase one in the same category as the rest of Colonial Crest. Thus Suburban bills all tenants using its cable directly.

7. When the upgrading of the cable service at phase one of Colonial Crest was accomplished, Colonial Crest waived any right of reversion it might have had in the cable equipment placed on the premises including underground cable, amplifiers, splitters and drop lines.

8. T & C notified Suburban that on or about July 1st, 1988 it was terminating Suburban's right to provide cable service at Colonial Crest and Oakview.

9. On July 15th, 1988 defendant's employees took steps to disconnect Suburban's cable TV service including cutting the cable at a lock box on a PP & L right of way.

I also adopt the following:

### STIPULATED FACTS

1. The Cable Associates, Inc., t/a Suburban Cable of Lancaster County, has recouped its capital investment including labor at each of the two subject apartment complexes and has earned a profit at each apartment complex.

2. That as of the date of this stipulation, Suburban Cable will have sustained no damages in the nature of lost profits as the result of any of defendant's conduct that is the subject of these lawsuits. Moreover, if the status quo is maintained, Suburban Cable agrees that at the time of trial it will have sustained no damages in the nature of lost profits as the result of any of defendant's conduct that is the subject of these lawsuits.

3. That the cost to Suburban Cable to reconnect cable service at the Oakview and Colonial Crest Apartment communities on July 15th and July 16th, 1988, was $1500, including labor and material. The cost of material, excluding truck rental, was $31.43.

4. That all easements of record and any plans attached thereto are authentic and admissible without objection.

5. The trial exhibits marked P–6 and P–7 are true and correct copies of current franchise agreements to Cable Associates, Inc. from the Township of East Hempfield and Township of East Lampeter, respectively, and the trial exhibit P–8 is a true and correct copy of a current ordinance of the Township of East Lampeter.

6. The PP & L drawing LLC, 39,000–27, 300–1, P–13, and PP & L drawing LLD 42, 491–S–26, 030–4, P–19, accurately show the "as-built" location of the underground lines

of PP & L at the Colonial Crest and Oakview Apartment complexes, respectively.

7. The testimony presented by any tenant on behalf of defendant residing at one of the apartment communities would be likewise presented by another tenant at the other apartment community which is the subject of this litigation.

## DISCUSSION

Suburban claims that it has a private right of action under Section 621(a)(2) of the Cable Communications Policy Act of 1984, 47 U.S.C.A. § 541(a)(2) (Supp.1988) allowing it to obtain a court order in the form of an injunction to allow it to provide cable television service to Colonial Crest and Oakview. Suburban relies heavily on *Centel Cable TV v. Admiral's Cove Associates*, 835 F.2d 1359 (11th Cir.1988) in support of its claim that a private right of action lies under the statute. I agree with Suburban. In *Centel*, Judge Fay carefully analyzes the four relevant factors identified in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and finds that the statute creates a federal right in favor of the plaintiff; that there is explicit and implicit evidence of legislative intent to provide such a right; that the right is consistent with the legislative purpose connected to the act; and that the cause of action is not of the type that is generally enforced in a State Court. I find Judge Fay's analysis extremely sound and adopt it for the purposes of this case. I am aware of a contrary position taken in *Cable Investments, Inc. v. Woolley*, 680 F.Supp. 174 (M.D.Pa. 1987). It seems clear to me from reading the Act and the legislative history connected with the Act that Congress intended cable TV operators to be able to piggyback on rights of way and easements dedicated for compatible uses.

Nevertheless, plaintiffs still face a formidable problem in regard to the equitable relief they seek. The factual context of this dispute is such that at both complexes Suburban has placed its cables in trenches for other utility lines including the Pennsylvania Power & Light Company and the Bell Telephone Company. These easements were obtained by the Pennsylvania Power & Light Company and are evidenced by as-built drawings and right of way maps. At least in some instances the Pennsylvania Power & Light Company rights of way are the subject of a recorded easement agreement placed on record in the Recorder of Deed's office in Lancaster County with copies of the maps attached. The obstacle facing plaintiffs is that these Pennsylvania Power & Light Company easements end at the foundation of the various apartment buildings within both complexes. Consequently, Suburban must show that it has some right to maintain its drop lines from the end of the easement to the respective apartment units in order to prevail on its claim for equitable relief.

This obstacle becomes more formidable in light of *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) which invalidated a New York statute which was held by the New York Court of Appeals to require a landlord to permit a cable company to maintain cable and equipment on the landlord's property without compensation. Justice Marshall struck down the statute because it did not provide just compensation for the taking even though the taking was minimal. Hence, Suburban has no right to continue to use the drop lines over the objection of T & C. It should be noted that in *Loretto* a predecessor owner of the landlord had permitted the cable company to place the lines on the roof of the premises. As here, there apparently was no written agreement relating to the cable company's right to continue to use the drop lines. The successor in interest in *Loretto* terminated the cable company's right to use the lines and the Supreme Court upheld this right in the face of the New York statute.

Suburban however makes an ingenious argument that a Bell Telephone easement relating only to the Colonial Crest complex provides an extremely broad easement which would authorize it to piggyback on Bell Telephone's broad rights. This recorded easement provides: "Any facilities constructed hereunder may, without further consideration, be relocated to conform to

new or reestablished highway limits. With the further right to place and maintain building cable, terminals, wires and any additional facilities that may be required to provide service to 'Colonial Crest' now or in the future." Suburban urges that the right to maintain building cable given to Bell Telephone Company by T & C enables it to piggyback on that right under the section of the federal statute. The federal statute specifically provides that a cable company franchised by a local municipality may construct its system over "public rights of way, and through easements,— which have been dedicated for compatible uses—." 47 U.S.C.A. § 541(a)(2).

Counsel for T & C counters this argument by contending that the rights of way and easements must be "dedicated." He argues that the concept of dedication means dedication for public use rather than a private agreement between an owner and one public utility. Although my initial impression at oral argument was T & C's counsel was in error in this contention, I find that in *Black's Law Dictionary* 500, (Rev. Fourth Ed.1968) the word dedicate is defined as follows:

> "To appropriate and set apart one's private property to some public use; as to make a private way public by acts evincing an intention to do so."

Similarly, the word dedication is defined in Black's as follows:

> "In real property law. An appropriation of land to some public use, made by the owner, and accepted for such use by or on behalf of the public."

I hold, in light of these definitions, that Congress intended when it used the words "dedicated for compatible uses," that there must be some public dedication such as a defined right of way on a map. In my view, the general phrase "maintain building cable" is not sufficient to provide an easement over all of the buildings in the Colonial Crest complex permitting Suburban to string their cable willy-nilly throughout the buildings without paying just compensation.

In regard to plaintiff's remaining claims for equitable relief I reject all of them.

Plaintiff claims that the Landlord and Tenant Act of 1951 as amended, PA.Stat.Ann. tit. 68 § 250.101–.602 (Purdon 1965 Supp. 1988) prevents the landlord from interfering with a tenant's right to purchase services of the tenant's choosing. This argument has been made before the Superior Court of Pennsylvania and has been rejected in an opinion by Judge Cavanaugh, *Wilco Electronic Systems, Inc. v. Davis*, [375 Pa.Super. 109], 543 A.2d 1202 (Pa.Super. 1988). Similarly, Judge Kosik in *Woolley* rejected this claim.

Plaintiffs' claim, that the comprehensive East Lampeter Township ordinance dealing with cable television requires T & C to allow it to continue to service the complexes in East Lampeter Township, is rejected because that ordinance runs afoul of the *Loretto* case.

Plaintiffs' claims that T & C is equitably estopped to deny a license are denied because under Pennsylvania law the estoppel continues only until the licensee has recouped his investment and realized a normal profit. *Huff v. McCauley* 53 Pa. 206 [1866] (1988).

Plaintiffs' claim of tortious interference with Suburban's contract with the tenants is rejected because plaintiffs have shown no tortious interference.

Plaintiffs' claims that Constitutional rights of the tenants have been abridged are rejected because defendant is not a state actor and plaintiffs' company-town analogy has not been proved by the evidence. Although the apartment complex has undertaken some municipal functions, the major municipal functions of police protection, fire protection, schooling and general municipal powers are not performed by T & C.

Plaintiffs' final argument is that the antitrust laws have been violated by T & C in that T & C has either tied the use of its satellite cable to the rental of one of its apartments or that T & C has monopoly power in regard to the supplying of apartments with TV cable in the Lancaster County area. This is not an antitrust tying case because T & C does not require any of

its tenants to purchase satellite cable service. Nor is it a monopoly case because plaintiff has failed to establish that T & C has monopoly power in any relevant product or geographic market.

It was illegal, however, for T & C to damage the cable and cable connections within the PP & L right of way. The damages for this illegal action amount to $1500.

I make the following:

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction over this controversy pursuant to 28 USC § 1331 and § 1332.

2. Proper venue lies in this Court.

3. This Court has in personam jurisdiction over the parties who have appeared here through counsel.

4. Plaintiff has a private right of action under Section 621(a)(2) of the Cable Communications Policy Act of 1984.

5. Plaintiff has no cause of action for claims relating to: (a) the Landlord and Tenant Act of 1951 as amended; b, the East Lampeter Township ordinance relating to cable television; c, the Pennsylvania Constitution; d, the United States Constitution; e, tortious interference with contractual arrangements; f, the antitrust statutes of the United States; and g, license estoppel.

6. Plaintiff will be awarded a judgment in the amount of $1500 plus interest from July 15th, 1988 representing damages to its personal property.

7. Plaintiffs' claims for equitable relief will be denied except to the extent that defendant may not interfere with Suburban's cable and equipment placed in or on PP & L rights of way. An appropriate order will be filed forthwith.

Counsel, I don't wish to debate this any further with you, but if you noticed any errors in the opinion that are slips of the tongue, I'll be pleased to correct them at this time.

Have you noticed any, Mr. Foley?

MR. FOLEY: I have not, your Honor.

THE COURT: Have you noticed any, Mr. Pollock?

MR. POLLOCK: Well, perhaps, your Honor, just in going through at the end you listed the various claims and I'm not sure that you referenced the license claim nor am I sure that you referenced the claim under the Pennsylvania

## APPENDIX B

Form 2323-1C
(R 3-66)
Order on CP-73

7786 MAY 24 1974

Received of The Bell Telephone Company of Pennsylvania, the sum of _____ ONE Dollar — ($ 1.00 ) in consideration of which __WE__ hereby grant unto said Company, its associated and allied companies, and their respective successors, assigns, lessees and agents, the right, privilege and authority to construct, reconstruct, operate and maintain lines of telephone and telegraph, consisting of such conduits, manholes, cables, wires, buried cables, loading coil pots and other underground appurtenances as the grantee may from time to time require, on, under and across the land that __WE__ own or in which __WE__ have any interest, said land being situated in the ___TOWNSHIP___ of ___EAST HEMPFIELD___, County of ___LANCASTER___, State of Pennsylvania, and bounded on the North by _LANDS OF D. BRUBAKER AND ROUTE # 3600b_, on the East by _LANDS OF EAST MANHEIM DEVELOPMENT CO. INC_, on the South by _LANDS OF A.D MELLINGER, P.R. DILLER AND ROUTE # 36006_, and on the West by _A HIGHWAY KNOWN AS ROUTE # 36006_, and also upon, under and along the roads, streets or highways adjoining the said land, with the right of ingress and egress at all times to and from the said land for the purposes herein provided.

Any facilities constructed hereunder may, without further consideration, be relocated to conform to new or re-established highway limits.

__WITH THE FURTHER RIGHT TO PLACE AND MAINTAIN BUILDING CABLE, TERMINALS, WIRES AND ANY ADDITIONAL FACILITIES THAT MAY BE REQUIRED TO PROVIDE SERVICE TO "COLONIAL CREST" NOW OR IN THE FUTURE.__

IN WITNESS WHEREOF, _____ WE _____ have hereunto ___ OUR ___ hand ___ and seal ___ , this _____ 26TH _____ day of APRIL A. D. 1974, at 25 S. CHARLES ST. BALTIMORE, MD

WITNESS: _____

ATTESTED:
WITNESS: _____ SEC'Y

MONUMENTAL PROPERTIES OF PA INC (SEAL)
Land Owner
By _____ Land Owner V. PRES (SEAL)

WITNESS: _____ _____ (SEAL)
Land Owner

WITNESS: _____ _____ (SEAL)
Land Owner

MAIL

H 65 617