JIM K. HILLIGOSS, Plaintiff-Appellant, v. ILLINI CABLEVISION OF ILLINOIS, INC., Defendant-Appellee.

Fourth District    No. 4—97—0151

Argued October 22, 1997.—Opinion filed January 14, 1998.

Mark T. Petty (argued), of Arcola, for appellant.

Lorna K. Geiler (argued), of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

In this case, the information highway intersects long-standing principles relating to ownership of real estate, and the question is which takes precedent. Plaintiff Jim K. Hilligoss appeals the dismissal of his complaint against defendant Illini Cablevision of Illinois, Inc. Plaintiff's complaint filed July 29, 1996, alleged three counts: count I sought a preliminary injunction and a mandatory injunction prohibiting defendant from installing its cable over plaintiff's property and requiring its removal; count II sought a declaratory judgment that defendant had no right to trespass on plaintiff's property and that the cable should be removed; and count III was an action of forcible entry and detainer alleging defendant had wrongfully withheld and continued to wrongfully withhold possession of property owned by plaintiff. The complaint alleged that in November 1995 defendant installed the cable on plaintiff's property. Defendant's combined motion to dismiss was brought pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 1994)). In granting the motion to dismiss, the trial court did not address the section 2—615 portion of the motion.

The issues are whether, as a matter of law, (1) defendant was conclusively shown to be a franchisee with Douglas County; (2) section 621(a)(2) of the federal Cable Communications Policy Act of 1984 (Cable Act) (47 U.S.C. § 541(a)(2) (1994)) allowed the installation of defendant's cable across plaintiff's property; and (3) defendant's failure to provide plaintiff with timely notice pursuant to section 5—1096 of the Counties Code (55 ILCS 5/5—1096 (West 1994)) was a bar to the use of existing easements and rights-of-way. We reverse and remand for further proceedings.

■ The section 2—619 portion of the motion to dismiss attacked all three counts of the complaint. Noting plaintiff sought to enjoin defendant's installation of cable television lines, defendant referred to section 621(a)(2) of the Cable Act, which provided as follows:

> "(2) Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses, except that in using such easements the cable operator shall ensure—

(A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;

(B) that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination of both; and

(C) that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator." 47 U.S.C. § 541(a)(2) (1994).

Defendant asserted that, based on this provision of the Cable Act, plaintiff may not make private agreements or otherwise limit rights-of-way in order to thwart a cable franchisee's access to rights-of-way or easements. Attached as exhibit A was a dedication of right-of-way for a public road signed by plaintiff on February 29, 1996. Exhibit B was a copy of an easement granted to GTE North, Inc., for installing telephone equipment in an easement across the subject property by G. Dean Hilligoss on October 30, 1995. Exhibit C was an affidavit of Del Lingafelter, defendant's chief engineer and project manager for laying the cable, stating the cable was installed pursuant to franchise agreements with the City of Tuscola and Douglas County, referred to as exhibits A and B in the affidavit, and that all cable or other equipment installed by defendant was installed in the right-of-way or easement. Although the affidavit referred to exhibits, they were not attached to the motion to dismiss.

■ The motion to dismiss then referred to the following portions of section 5—1096 of the Counties Code:

"(c) In any instance in which the owner of a residential building or the owner of improved or unimproved real estate intends to require the payment of just compensation in excess of $1 in exchange for permitting the installation of cable television facilities in and upon such building, or upon, beneath or over such real estate, the owner shall serve written notice thereof upon the cable television franchisee. Any such notice shall be served within 20 days of the date on which such owner is notified of the cable television franchisee's intention to construct or install cable television facilities in and upon such building, or upon, beneath or over such real estate. Unless timely notice as herein provided is given by the owner to the cable television franchisee, it will be conclusively presumed that the owner of any such building or real estate does not claim or intend to require a payment of more than $1 in exchange and as just compensation for permitting the installation of cable television facilities within and upon such building,

or upon, beneath or over such real estate. In any instance in which a cable television franchisee intends to install cable television facilities as herein provided, written notice of such intention shall be sent by the cable television franchisee to the property owner or to such person, association or managing agent as shall have been appointed or otherwise designated to manage or operate the property. Such notice shall include the address of the property, the name of the cable television franchisee, and information as to the time within which the owner may give notice, demand payment as just compensation and initiate legal proceedings as provided in this subparagraph (c) and subparagraph (d).

\*\*\*

(e) Neither the giving of a notice by the owner under subparagraph (c), nor the assertion of a specific claim, nor the initiation of legal action to enforce such claim, as provided under subparagraph (d), shall delay or impair the right of the cable television franchisee to construct or install cable television facilities and maintain cable television services within or upon any building described in subparagraph (a) or upon, beneath or over real estate described in subparagraph (b)." 55 ILCS 5/5—1096(c), (e) (West 1994).

Exhibit D was a letter to plaintiff dated June 26, 1996, from Lorna K. Geiler on the letterhead of her law office providing plaintiff notice of defendant's intention to continue to install cable television facilities within the easement affecting plaintiff's property.

Defendant's motion to dismiss argued that, since plaintiff had a right to pursue installation under the Counties Code, later receipt of notice did not harm him. Defendant's position was that, based on this statutory provision and the documents, it was entitled to install its equipment, with damages to be determined at a later date.

Defendant subsequently filed a motion for leave to attach as exhibits the franchise agreements referred to in Lingafelter's affidavit. Exhibit B to the affidavit was Douglas County Ordinance No. 95—0—01, establishing the conditions for awarding a 15-year nonexclusive franchise to construct, operate, and maintain a community antenna television system (CATV) within the unincorporated areas of the county (Douglas County, Ill., Ordinance No. 95—0—01 (eff. February 21, 1995) (hereinafter Ordinance No. 95—0—01)) and defendant's acceptance of the terms, conditions, and specifications of the ordinance executed March 3, 1995. The motion to attach was allowed without objection.

Plaintiff's reply to the motion to dismiss did not add any other documentary exhibits for the trial court's consideration. The gist of the reply was that the documents attached to the motion to dismiss

did not establish defendant was appointed a franchisee or indicate a designated franchise area. Plaintiff also stated the subject properties were not located within the City of Tuscola. Plaintiff did verify that the facts alleged in the reply to the motion to dismiss were true and correct, except those stated to be on information and belief.

Following a hearing, the motion was taken under advisement and the parties were given 21 days to file additional memoranda or exhibits. Defendant filed a supplemental memorandum with (1) certified copies of the Douglas County rights-of-way for the two tracts and the GTE easements granted over the two tracts, (2) a copy of the Douglas County ordinance filed with the Douglas County recorder's office, and (3) a map showing the boundary lines of the easements and rights-of-way and where, within those areas, the defendant installed its cable as exhibits. The memorandum indicated the subject tracts were located in unincorporated Douglas County.

The rights-of-way granted, conveyed, and dedicated "to the County of Douglas, State of Illinois for the purpose of a public highway" the real estate described therein. The right-of-way dedications were limited to "public road purposes and for no other purposes, including but not necessarily limited to public and/or private utilities."

The easements granted conveyed and warranted to GTE North, Inc., the following:

> "the perpetual right, privilege, easement and authority to construct, operate, patrol and maintain its communication lines, including the necessary underground cables, wires, conduits, markers and appurtenances upon, over, under and across the land hereinafter described, some of which said land may be included in the public highway, to form a part of a communication system to be owned and operated by said corporation, its successors and assigns, together with the rights of ingress and egress to the said land and the right to trim now and hereafter all brush and trees along the said lines as may be necessary for the installation, operation and maintenance of said lines."

These documents contain the limiting language:

> "This Easement Grant does not include the perpetual right to place, replace, operate, and maintain additional communication lines and appurtenances, subsequent to those initially installed. Grantee shall not place such additional communication lines and appurtenances until after Grantor has been consulted with and duly notified and gives written permission and is appropriately compensated."

In granting the motion to dismiss, the trial court found (1) defendant is a CATV franchisee under the terms of the Douglas County

ordinance; (2) defendant installed its cable and equipment on or under the subject land within the easement to GTE and/or right-of-way to Douglas County previously granted by plaintiff, defendant is not bound by the limiting language in these documents due to the provisions of the Cable Act, and plaintiff's assertion that defendant's use within the existing easement or right-of-way is not compatible is without merit; (3) while defendant failed to provide timely notice to plaintiff as required by the Illinois statute, that failure can in no manner be considered a bar to defendant's use of existing easement or right-of-way grants because the Illinois statute merely confers the right to seek compensation from defendant for its use of the preexisting grants and the notice requirement is not a condition precedent to commencement of installation; (4) while the Illinois statute provides the opportunity and mechanism for plaintiff to seek just compensation, plaintiff's complaint as presently formulated seeks no such relief; and (5) defendant was and is entitled to install and maintain its equipment within the GTE easement and county right-of-way.

■ On appeal, the reviewing court considers *de novo* the propriety of granting a motion to dismiss pursuant to section 2—619 of the Code. *Spiegel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 998, 671 N.E.2d 350, 355 (1996). Section 2—619 of the Code permits dismissal if "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1994). Where the defect is not apparent on the face of the pleading attacked, the motion must be supported by affidavit or documents of a similar nature such as depositions and answers to interrogatories. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735 (1993). In determining the propriety of the granting of the motion to dismiss, this court considers "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie*, 156 Ill. 2d at 116-17, 619 N.E.2d at 735.

■ Plaintiff argues the documents do not establish defendant is a franchisee of Douglas County. The construction of an ordinance is a question of law, to which rules of statutory construction apply. *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 122, 617 N.E.2d 1251, 1259 (1993); *Village of Southern View v. County of Sangamon*, 228 Ill. App. 3d 468, 472, 592 N.E.2d 639, 642 (1992). The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Village of Southern View*, 228 Ill. App. 3d at 472, 592 N.E.2d at 642. In ascertaining the legislative intent, the courts look first to the language of the legislative provision. *Solich v.*

*George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994). This court has examined the entire ordinance for guidance as to intent. See *City of Springfield v. Board of Election Commissioners*, 105 Ill. 2d 336, 341, 473 N.E.2d 1313, 1315 (1985).

The title to the Douglas County ordinance indicates it is an ordinance to establish conditions for awarding a 15-year nonexclusive franchise. Plaintiff argues the use of the term "said franchise" in the title is an indication that adoption of the county ordinance was intended to be an awarding of a specific franchise. Section 1 states the purpose of the ordinance was to provide for the granting of "Franchises" and set forth obligations and rights of the county and grantee. A "Franchise" is defined as "the right, privilege and authority granted by this Ordinance to construct, maintain and operate a CATV system through use of Streets of any unincorporated area of Douglas County, Illinois." Douglas County, Ill., Ordinance No. 95—0—01 (eff. February 21, 1995). A "Grantee" is "any person, firm, corporation or partnership to whom a franchise shall be granted hereunder." "Grantor" is "Douglas County as represented by its county board or any delegate acting within the scope of its jurisdiction." Douglas County, Ill., Ordinance No. 95—0—01 (eff. February 21, 1995). Section 4(A) requires the county board to conduct a public proceeding concerning a grantee's application for a franchise to determine whether it possessed all necessary qualifications and its construction arrangements were adequate and feasible. If the county board makes the appropriate finding within 30 days after the close of the public hearing, the county shall give the grantee the right, privilege and franchise to construct, operate, and maintain a CATV system. Section 4(B) of the ordinance provides:

> "A Franchise granted by the County under the provisions of this Chapter shall permit constructing, operating and maintaining a Cable System in the County, including the right to erect, install, construct, repair, replace, reconstruct and retain in, on, over, under, upon, across and along the Streets and other public property such lines, cables, fiber optics, conductors, ducts, conduits, vaults, manholes, amplifiers, appliances, pedestals, attachments and other property and equipment as are necessary and appropriate to the operation of the Cable System. It shall be unlawful for any person to construct, install or operate a Cable System in the County within any Street or within any other right-of-way within the County without a properly granted Franchise awarded pursuant to the provisions of this Ordinance, which Franchise is in full force and effect." Douglas County, Ill. Ordinance No. 95—0—01 (eff. February 21, 1995).

Section 4(C) states the franchise so granted is not exclusive, and the county may grant a similar use to another person during the period of the franchise. If the county elects to grant an additional franchise, in an area where a franchise has already been granted, to an applicant not authorized to provide service within the county prior to the effective date of the ordinance, the county must do so after considering several enumerated factors at a public hearing noticed in a newspaper of general publication. The ordinance and any franchises awarded pursuant to it relate to and cover the entire unincorporated areas of Douglas County as provided in section 4(E).

Defendant points to several references in the ordinance to the term "this franchise" and to franchise as "herein granted." Defendant argues this language indicates the ordinance was intended to be an ordinance awarding a franchise to defendant rather than an enabling ordinance that would allow awarding franchises generally. However, section 19(A) provides:

"This Ordinance and its terms and provisions shall be accepted by Grantee by written instrument executed and acknowledged by it as a deed is required to be, and filed with the County Clerk within twenty (20) days after passage of an Ordinance granting Franchise to such Grantee. Such written instrument shall state and express the acceptance of this Ordinance and its terms, conditions and provisions and said Grantee shall agree in said instrument to abide by, to observe and perform same, and declare that statements and recitals herein are correct and that it has made and does make this Agreement, statements and admissions in this Ordinance recited to have been made." Douglas County, Ill., Ordinance No. 95—0—01 (eff. February 21, 1995).

Plaintiff argues the use of the term "this franchise" in the renewal section refers to a franchise to be renewed and not to this particular ordinance. Plaintiff notes defendant was not named in this ordinance as a franchisee or grantee.

The county has the power to make contracts necessary to the exercise of its corporate powers. 55 ILCS 5/5—1005(3) (West 1994). Approval of an ordinance requires a favorable vote by a majority of the members of the county board present at a meeting, except where otherwise provided. 55 ILCS 5/2—1005 (West 1994). Section 5—1096 of the Counties Code relating to the granting of a CATV franchise does not provide an exception to the requirement that adoption of an ordinance must be by a majority vote of the board members present at the meeting.

Defendant cites no cases in support of its interpretation of the ordinance, in violation of Supreme Court Rules 341(e)(7) and (f). 155 Ill. 2d Rs. 341(e)(7), (f).

■ The ordinance could be interpreted as plaintiff suggests or as defendant suggests. It is unnecessary for this court to decide the proper construction since, if it can be construed as plaintiff suggests, defendant is not entitled to dismissal of the complaint as a matter of law. On the record presented, the ordinance could be construed to require the adoption of another ordinance specifically awarding a franchise to defendant and incorporating this general ordinance by reference. To the extent there may be an ambiguity, the practice in Douglas County may be evidence of what the county board intended, including the acceptance of franchise fees by the county and whether companies were generally allowed to conduct business after filing an acceptance of the ordinance. In any event, dismissal of plaintiff's complaint is premature.

Plaintiff also argues defendant's acceptance of the ordinance was not in the proper form because the ordinance required it to be executed and acknowledged as a deed would be, and the acceptance was not in this form. See 765 ILCS 5/20 (acknowledgement or proof of deeds, et cetera), 26 (form of acknowledgement) (West 1994). It is unnecessary to decide this question. Defendant has cited no legal authority indicating that its unilateral acceptance of the ordinance can create a contract with the county in the event the ordinance is construed as an enabling ordinance rather than an ordinance specifically referring to defendant. In addition, neither party has addressed the questions of whether the county may waive the deficiency in the form of the acceptance and, if so, whether plaintiff has standing to complain.

Even though reversal is required based on the analysis of the first issue, we will address the remaining issues.

■ The plaintiff argues the finding of the trial court that the Cable Act allowed the installation of defendant's cable across his property was contrary to the evidence before the court. Lingafelter's affidavit stated defendant's cable was installed on existing rights-of-way or easements. Plaintiff argues there is nothing in the record to show the location of the cable after installation. Lingafelter's affidavit is sufficient. Plaintiff did not submit a counteraffidavit disputing the veracity of Lingafelter's statement. Plaintiff argues Lingafelter's affidavit is unreliable because it does not refer to the certified copies of the easements and rights-of-way that were later submitted to the trial court. Plaintiff presented no counteraffidavit to the trial court that indicated the legal descriptions of the easements or rights-of-way in the documents relied on by Lingafelter were different from the legal descriptions in the certified copies. Nor does plaintiff deny the easements and rights-of-way were in existence when the cable was installed. The trial court could find, based on the documents

submitted, that the cable equipment was installed in the existing easements or rights-of-way.

Plaintiff asserts the focus of the analysis under section 621(a)(2) of the Cable Act should not be on whether cable installation is compatible with the purpose of the easement, but whether it is compatible with the purpose of the dedication. Plaintiff relies on the limitations placed on the dedications of the rights-of-way and the easements expressly included in those documents. We disagree.

Plaintiff relies on *Cable Associates, Inc. v. Town & Country Management Corp.*, 709 F. Supp. 582 (E.D. Pa. 1989). However, that reliance is misplaced. In *Cable Associates*, the issue related to whether the cable company had a right to continue use of drop lines to individual apartments within the defendant's buildings. *Cable Associates*, 709 F. Supp. at 583. The court construed "dedication" as a conveyance to the public of an interest in real property. As to one of the apartment buildings in question, the easement had been granted to Bell Telephone Company "with the further right to place and maintain building cable, terminals, wires, and additional facilities that may be required to provide service." *Cable Associates*, 709 F. Supp. at 584. The court noted there was no evidence the cable television lines would follow the telephone lines in the apartment complex. The scope of Bell Telephone's easement was the actual location of its wires. *Cable Associates*, 709 F. Supp. at 586. The court noted the Cable Act was not intended to confer eminent domain rights on franchise cable operators, and the easements referred to in that act must be (1) compatible and (2) "dedicated" in the broader sense than merely set apart for some private purpose. The Bell Telephone easement was not "dedicated" in that sense. *Cable Associates*, 709 F. Supp. at 585-86.

Unlike *Cable Associates*, the GTE easement here is a public dedication, allowing for telephone line service to more than just plaintiff's property. In *Centel Cable Television Co. v. Thos. J. White Development Corp.*, 902 F.2d 905 (11th Cir. 1990), a developer attempted to deny the cable company access to utility easements within the development. The court found the Cable Act was intended to forbid any private agreements that would prevent a cable franchise from using dedicated utility easements. Congress intended to authorize cable operators to "piggyback" on easements dedicated to electric, gas, or other utility transmission. So, the plats and agreements in that case, which purported to control access to development roads by allowing access to electric and telephone utilities, while prohibiting access to the cable company, violated the Cable Act. *Centel*, 902 F.2d at 909. The court concluded it would be inconsistent

with the policy of the Cable Act to hold that cable operators could not piggyback on access rights granted to other utilities where the exercise of the rights was necessary to the full enjoyment of the related easements. *Centel*, 902 F.2d at 909.

In *Media General Cable of Fairfax, Inc. v. Sequoyah Condominium Council of Co-owners*, 991 F.2d 1169 (4th Cir. 1993), Media sought to be allowed to install cable wires in compatible easements in the condominium commons area. The denial of such an order was affirmed. The condominium association had granted easements to various utilities, with limitations and conditions. The court found the easements granted were private, not public, easements and placing Media's cables along the private easement constituted a compensable taking that the Cable Act did not authorize. *Media General*, 991 F.2d at 1172. *Media General* is distinguishable because this case does not involve the defendant attempting to get access to plaintiff's house or buildings, but to install cable in the public easements along the roadway.

In *C/R TV, Inc. v. Shannondale, Inc.*, 27 F.3d 104, 107-09 (4th Cir. 1994), a subdivision developer attempted to limit access to a cable company. In the deed for each lot, the developer reserved a right-of-way for general utility use and the right to convey those rights. It owned all 55 miles of paved roads in the subdivision. It granted easements for electric and telephone service lines, and authorized GTE South, Inc., to string telephone lines on its poles. It also authorized a competing cable company to string television cables on the poles. After obtaining a franchise, C/R TV started installing cable and the subdivision attempted to halt that action, warning the cable company its crews would be considered trespassers. The court of appeals found the easements allowing " 'the installation, erection, maintenance, repair and operation of electric transmission and distribution pole lines, and electric service lines, with telephone lines thereon' " (*C/R TV, Inc.*, 27 F.3d at 106) sufficient to authorize the stringing of television transmission cable. The discussion in that case focused on West Virginia law rather than the Cable Act.

■ We conclude section 621(a)(2) of the Cable Act allows defendant to place its cable within the easements and rights-of-way involved here if it has established it is a franchisee. This conclusion, however, does not determine plaintiff's final issue, *i.e.*, whether the trial court erred in its ruling as to the necessity of notice required by section 5—1096 of the Counties Code. Defendant has cited no authority suggesting the Cable Act preempts the state from enacting requirements with which it must comply before proceeding to install its cable. Indeed, defendant argues the Counties Code provides an alternative basis for allowing it to install its cable.

Section 5—1096(c) of the Counties Code requires written notice of an intention to install cable television facilities be sent by the CATV franchisee to the property owner or manager. 55 ILCS 5/5—1096(c) (West 1994). Defendant's notice was after it had already placed its cable within the easements. The parties dispute its accuracy on some points and whether it applies to one or both of the subject tracts. It is unnecessary to resolve these disputes. Plaintiff acknowledges that section 5—1096 of the Counties Code prohibits a property owner from forbidding or preventing the franchisee from entering upon the property owner's real estate in connection with the construction or installation of a CATV system and facilities, provided, however, that the real estate owner may require just compensation as permitted under sections 5—1096(c) and (d). 55 ILCS 5/5—1096(b) (West 1994).

Plaintiff argues that defendant cannot enter the properties until section 5—1096 is complied with, and defendant argues that plaintiff is not harmed, he has now received notice, and this is not a proceeding to establish the amount of compensation owed him. Section 5—1096(e) provides that the giving of a notice by the owner under subparagraph (c), the assertion of a specific claim, and the initiation of legal action to enforce such claim under subparagraph (d) do not affect the right of the franchisee to construct or install cable. 55 ILCS 5/5—1096(e) (West 1994). Section 5—1096(e) does not state that defendant need not give notice of an intent to install cable before proceeding to do so. By installing cable without notice to the property owner, a CATV franchisee deprives the property owner of an opportunity to view and photograph the disruption to his property so as to be able to prove the amount of damages to which he is entitled. We do not agree with defendant that section 5—1096 allows it to proceed and pay damages later.

In considering this case, we are disturbed by the absence in the CATV access provisions of the Counties Code of any penalties or award of attorney fees to which a property owner might become entitled because of the failure of the CATV franchisee to provide notice to the owner of the real estate prior to proceeding to install cable. We recognize that defendant's complete compliance with section 5—1096 of the Counties Code, although late, will avoid the imposition of a mandatory injunction to remove the cable already installed. Therefore, on remand, since plaintiff has alleged trespass as the basis for the relief he sought, he shall be given the opportunity to amend his complaint to allege a common law action to seek damages for the trespass based on the failure of defendant to provide notice pursuant to the Counties Code prior to installing its cable. See 34 Ill. L. & Prac. *Trespass* §§ 12, 13 (1958).

The judgment of the circuit court of Douglas County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

KNECHT and COOK, JJ., concur.